| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>*Proposed Attorneys for the Debtor*<br>120 Bloomingdale Road, Suite 100<br>White Plains, New York 10605<br>(914) 381-7400<br>Robert L. Rattet, Esq.<br>Jonathan S. Pasternak, Esq. | *Hearing Date*: July 26, 2024<br>*Hearing Time*: 12:00 p.m. |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

                        Chapter 11

125 BROAD PARTNERS LLC,               Case No. 24-42130 (ESS)

                    Debtor.
-----------------------------------------------------------x

## OBJECTION TO MOTION TO VACATE THE AUTOMATIC STAY

125 Broad Partners LLC, the above-captioned debtor and debtor-in-possession ("Debtor"), by and through its undersigned proposed counsel, objects (the "Objection") to the motion (the "Motion") filed by Levon NJ CXX LLC (the "Movant") seeking an Order (i) pursuant to 11 U.S.C. § 362(d) annulling the automatic stay; and (ii) for such other relief the Court deems just and proper. In opposition of the Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

The Motion should be denied because the Movant has failed to demonstrate the necessary cause to warrant stay relief under applicable law in this jurisdiction, especially at such an early stage in this proceeding. Although the Debtor does concede that it is a single asset real estate debtor, it is still too early in this Chapter 11 case for stay relief as to the foreclosure of the Property (defined below). Additionally, the Debtor believes the Motion should be denied because Movant has already agreed to arbitrate this dispute under a *Heter Iska* (defined below), wherein the event of any dispute, jurisdiction is granted to the Beth Din Rabbinical Court ("Beth Din"), which court has recently requested the parties appear for arbitration. In fact, Beth Din issued a ruling requiring

1

the parties to come to arbitration and refrain from any action or litigation, which the Movant continues to ignore. Moreover, the Debtor has discovered it has claims against the Movant due to a recent history of tortious interference by Movant with respect to potential purchasers of the Property, which absent Movant's tortious conduct, could have paid Movant's claims in full. Finally, there is significant equity in the Property which, if the Debtor is given time to market and sell the Property with the Debtor's retained broker, will also benefit the substantial unsecured creditors of the Debtor. The Debtor believes that it needs a continued reasonable amount of time under Chapter 11 protection, in order to first resolve its disputes with the Movant in Beth Din, and thereafter market and sell the Property for the benefit of all creditors.

## **RELEVANT BACKGROUND**

1. The Debtor was organized under the laws of the State of New Jersey on November 27, 2019. The Debtor is a limited liability company organized under the laws of New Jersey, whose management operates at 543 Bedford Avenue, Suite 317, Brooklyn, New York 11211.

2. On February 10, 2020, the Debtor acquired real property located at 125 Broad Street, Elizabeth, New Jersey 07201 (the "Property"). The Property is a 14-story tower in downtown Elizabeth, known colloquially as the "Hersch Tower".

3. When the Debtor acquired the Property on February 10, 2020, the acquisition cost $13,000,000, which was partially funded by a $8,500,000 loan from the Movant, entered into on February 10, 2020, with the rest of the balance funded by the Debtor through equity contributions and unsecured loans. Since the closing, the Debtor borrowed all needed funds from the local community on an unsecured basis totaling more than $10,000,000.00 to date.

4. Although the Property has already obtained approval for a conversion of floors two through eleven to residential rental units, due to the acquisition occurring on the eve of the Covid 19- Pandemic in March 2020, the Debtor's attempts to redevelop the Property were halted

immediately. Despite same, the Debtor continued to make debt service payments through December 2022. Unfortunately, thereafter the Debtor defaulted on its loan to Movant.

5. On February 15, 2023, Movant commenced a mortgage foreclosure action in the Superior Court of New Jersey: Chancery Division, styled as *Levon NJ CXX LLC v. 125 Broad Partners LLC; Division of Fire Safety; and Joel Friedman* (the "Foreclosure Action").

6. Ultimately, Levon obtained a judgment of foreclosure on January 5, 2024. Movant was awarded a sum of $13,162,582.35 and a foreclosure sale of the Property was then scheduled for May 15, 2024. The Debtor timely appealed the judgment, which appeal is still pending albeit currently stayed by virtue of the automatic stay.

7. The Debtor has consistently disputed the amount awarded to Movant under the judgment since the allegedly accrued interest on the principal amount may be subject to disallowance under religious laws governing the parties with the dispute to be decided by Beth Din in Brooklyn.

8. Simultaneously with and as a condition to entering into the loan with Movant, the Debtor and Movant entered into a *Heter Iska,* (meaning "business permit") agreement (the "*Heter Iska*") to get around the prohibition under Jewish religion that forbids the payment of interest from one Jewish party to another. Under the *Heter Iska*, Movant was also "granted" a minority interest in the Debtor. Furthermore, under the *Heter Iska* the parties agreed that in the event of any dispute, they may resort to judicial forums as well as Beth Din. A copy of the *Heter Iska* is annexed hereto as **Exhibit "A"**.

9. Despite Movant's agreements made above in connection with the *Heter Iska*, Movant has continued to ignore it, has omitted any mention of it in the Motion, and has further ignored all demands of Beth Din for arbitration and cessation of all enforcement activity despite consenting to its jurisdiction. The decision dated May 14, 2024, ordering the parties to arbitrate is

annexed hereto as **Exhibit "B"**. The most recent demand made by Beth Din for arbitration between the Debtor and the Movant dated July 11, 2024, is annexed hereto as **Exhibit "C"**. To date Movant has ignored both of these documents issued by Beth Din in violation of the *Heter Iska*.

10. On May 22, 2024, the Debtor filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of New York (the "Petition Date") to protect the equity interests in the Property and obtain a reasonable amount of time to sell the Property.

11. Since the Petition Date, the Movant has been on a litigation campaign to destroy the Debtor's chances of reorganization. Exactly one week into this Chapter 11 case, on May 29, 2024, Movant filed a superfluous Motion to Change Venue (the "Venue Motion") [ECF No. 10], arguing without merit that this Chapter 11 case should be transferred to the Bankruptcy Court for the District of New Jersey, despite the clear fact the Debtor is managed solely from Brooklyn, New York.

12. As a result of the Venue Motion, the Debtor had to exert the early weeks of its Chapter 11 case opposing it and attending a hearing on said motion on June 20, 2024 (the "Venue Change Hearing"). At the Venue Change Hearing, this Court decided that the parties were to submit a status letter by July 10, 2024, informing this Court if the parties would agree to mediation over the Venue Motion or if they would need to schedule oral arguments.

13. On June 25, 2024, when counsel for the Debtor contacted Movant's counsel to request mediation for the resolution of the parties' disputes, Movant declined to mediate the Venue Motion and instead directed its counsel to file the current Motion.

14. On July 10, 2024, Movant decided to withdraw the Venue Motion, although by then the damage had been done, as the Debtor had already spent the early formulative weeks of its Chapter 11 case opposing the superfluous Venue Motion.

15. Notwithstanding the time lost to arguing the now withdrawn Venue Motion, earlier on July 9, 2024, the Debtor filed an Application to Employ Northgate Real Estate Group as Real Estate Advisor for the Debtor [ECF No. 30], hoping to continue with its Chapter 11 goal of maximizing the value of the Property for a return to *all* of the Debtor's allowed creditors.

16. The Debtor believes in light of the above, that it is inappropriate to consider the Motion, especially at this early stage of the Chapter 11 case. The Debtor has only just begun attempting to market the Property and it requires a reasonable amount of time to do, as afforded to other similarly situated single asset real estate debtors. Given the substantial pre-petition offers received, the Debtor's estate will be materially benefitted from a fully vested market and sale process while at the same time seeing if the parties can reach resolution of Movant's claims through either Beth Din or mediation.

## ARGUMENT

### A. The Debtor is Entitled to Continued Protection of the Automatic Stay

17. Section 362(a)(3) of Title 11 of the United States Code (the "Bankruptcy Code") "operates as a stay . . . of . . . [a]ny act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Among other things, the automatic stay relieves a debtor of the burden of litigating in multiple forums while it concentrates on the successful reorganization or orderly liquidation of its estate. *In re Colin*, 35 B.R. 904, 907 (Bankr. S.D.N.Y. 1983) ("the design of subsection 362(a)(1) is, in part, to relieve the debtor from the burdens of multi-forum litigation").

18. The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midatlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection*, 474 U.S. 494, 503 (1986). Additionally, "[the automatic stay] maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate." *In re Residential Capital, LLC*, 12-12020 MG, 2012 WL 3249641, *2 (Bankr. S.D.N.Y. Aug 7, 2012), citing COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012).

19. The Debtor commenced this Chapter 11 case to allow it breathing room to sell the Property. If the automatic stay is lifted to allow the Movant to resume foreclosure, there will undoubtedly, at the very least, be a significant loss of value and equity of the Debtor's estate. Moreover, the Debtor's principals and the professionals the Debtor has and will retain will need to divert time and resources away from their efforts in this case at this critical juncture to oversee issues related to the Foreclosure Action. Such delay (or worse), and the additional costs that the Debtor will bear in defending against the Movant's foreclosure action in a separate forum, will only diminish the return to the Debtor's creditors. This is clearly an outcome the automatic stay was meant to prevent. *See* generally *Fid. Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d Cir. 1976) (citations omitted) ("Such jurisdiction is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.").

20. The Motion was filed less than two months into the Debtor's Chapter 11 case, and it is still too early in this matter for the Motion. After spending the first few weeks of this Chapter 11 case defending the arguably bad faith litigation tactic that was the Venue Motion, the Debtor has just retained a broker, pending Court approval, to assist with marketing and selling the Property. Additionally, the Debtor believes that pre-petition the Movant interfered with and sabotaged at least two separate potential purchasers for the Property. The Debtor believes Movant

informed these potential purchasers that the Debtor would be losing the Property soon to Movant and that the potential purchasers should wait until Movant finishes its foreclosure. Accordingly, the Debtor still needs more time to conduct discovery of these claims in order to assert any causes of action it may have against the Movant.

21.     Moreover, the Beth Din court has demanded that Movant cease and desist from any further enforcement activity, including the Motion. Accordingly, the Motion should be denied at this time.

**B. The Movant Cannot Establish Cause for Relief from the Automatic Stay Under the *Sonnax* Factors**

22.     Bankruptcy Code § 362(d)(1) provides that the Court "shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

23.     Additionally, it is the Movant's burden to establish that "cause" exists for relief from the automatic stay. 11 U.S.C. § 362(d). The Bankruptcy Code does not, however, define the phrase "for cause." In the context of stayed prepetition litigation, though, the Second Circuit has set forth 12-factors (the "*Sonnax* Factors") that must be considered in a determination of whether "cause" exists to lift the automatic stay: (1) whether relief would result in a partial or complete resolution of the issues, (2) the lack of any connection with or interference with the bankruptcy case, (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (5) whether the debtor's insurer has assumed full responsibility for defending the action, (6) whether the action primarily involves third parties, (7) whether litigation in another forum would prejudice the interests of other creditors, (8) whether the judgment claim arising from the other action is subject to equitable subordination, (9) whether movant's success in the other proceeding

would result in a judicial lien avoidable by the debtor, (10) the interests of judicial economy and the expeditious and economical resolution of litigation, (11) whether the parties are ready for trial in the other proceeding, and (12) the impact of the stay on the parties and the balance of harms. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285-87 (2d Cir. 1990); *see also Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the *Sonnax* Factors, made only sparse factual findings, and ultimately did not provide the appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate."). Courts have recognized that not all of the *Sonnax* Factors will be applicable to every case, and the Court may disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d at 143.

24. In a request for stay relief, the moving party bears the initial burden to demonstrate that good cause exists under the *Sonnax* Factors for lifting the stay, and "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285*; Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (quotation omitted).

25. In the Motion, although the Movant provides for an analysis of the *Sonnax* Factors, the Movant is incorrect in its conclusion that they support granting the Motion. The Debtor will analyze the factors below and state how they weigh in favor of denying the Motion.

*Sonnax* Factor 2: Lifting the Automatic Stay Will Interfere with This Case

26. The second *Sonnax* Factor weighs in favor of the Debtor because lifting the automatic stay to allow the Movant to resume its foreclosure action will interfere with this Chapter

8

11 case. The lifting of the automatic stay's protections in the Debtor's Chapter 11 case at this early stage of the process, would have a severe and disparate impact on the Debtor's ability to reorganize and maximize the value of the Property. Furthermore, the Debtor will have to expend time and effort defending itself in a resumed foreclosure proceeding. *See*, e.g., *In re Penn-Dixie Industries*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) (describing impact of litigation on debtors' time and resources as one criterion for staying litigation); *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) (noting that the automatic stay is intended to provide the debtors with a "breathing spell" to address the immediate concerns related to the restructuring of the debtors' businesses); *see also In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying relief finding that "allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other creditors"). Thus, all other creditors would suffer as the Debtor's few remaining assets are squandered on defending against foreclosure, and the resolution of disputes and confirming the plan is made much more difficult if not impossible.

27. There is simply no reason to divert the Debtor's attention from this case in order to resume defending itself from foreclosure, which would only result in an unfair windfall to the Movant. Moreover, the Debtor is currently working to market and sell the Property and resolve all issues with the Movant. The Debtor firmly believes, if the stay remains in effect, it will be able to settle its disputes with Movant and sell the Property to the benefit of *all* creditors. Therefore, the second *Sonnax* Factor weighs against granting relief from the automatic stay.

<u>*Sonnax* Factors 3 and 4: The Litigation Does Not Involve the Debtor as a Fiduciary and is Not a Specialized Tribunal</u>

28. The dispute does not involve the Debtor as a fiduciary, and a foreclosure proceeding would not be before a specialized tribunal. Accordingly, the third and fourth *Sonnax* Factors both weigh against granting relief from the automatic stay.

*Sonnax* Factor 5: Whether an Insurer has Assumed Responsibility for the Claims

29. As insurance has no bearing on the foreclosure proceeding, the Debtor submits that this factor is irrelevant for the current dispute with the Movant. Therefore, this factor should not be considered.

*Sonnax* Factor 6: The Eviction Action Does Not Primarily Involve Third Parties

30. The manner in which the Movant describes the Foreclosure Action makes clear that the Movant considers the Debtor to be the primary party. Courts find that this factor weighs against relief from the automatic stay when a debtor is a primary party. *See City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the stay was proper."). Accordingly, the sixth *Sonnax* Factor weighs against granting relief from the automatic stay.

*Sonnax* Factor 7: The Relief Would Prejudice the Interests of Others

31. Requiring the Debtor to defend against the Movant's claims in a resumed foreclosure proceeding would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court." *Publicker Indus. v. Salomon (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992). If the stay is modified, the Debtor's creditors will be prejudiced, as the Debtor has a sale and process for a plan in prospect. The granting of the Motion and allowing the Movant to resume would likely destroy the ability to move forward on such a sale and plan, as the Debtor would be unable to sell the Property, confirm its

plan, and complete the resolution of its disputes with creditors if its Property is foreclosed on. For this reason, the seventh *Sonnax* Factor weighs against granting relief from the automatic stay.

*Sonnax* Factors 10 and 11: The Interests of Judicial Economy and Economical Resolution of the Dispute are Best Served by Maintaining the Automatic Stay

32. In the Motion, the Movant requests permission to modify the automatic stay to resume the foreclosure proceeding on the Debtor's Property. Therefore, if the Movant's requested relief is granted, the Debtor's entire Chapter 11 case would be derailed.

33. In contrast, the Debtor should be able to make significant headway in resolving most of its claims and confirming its eventual plan. The interests of judicial economy and the economical resolution of the dispute between the Movant and Debtor are best served by resolving these disputes in this Chapter 11 case. *In re Residential Capital, LLC*, 2012 WL 3249641, at *6. Accordingly, the tenth and eleventh *Sonnax* Factors weigh in favor of denying the requested stay relief.

*Sonnax* Factor 12: The Balance of Harms Favors Maintaining the Automatic Stay

34. The balance of the harms weighs in favor of the Debtor as the automatic stay is meant to provide a debtor with a "breathing spell" after the commencement of a chapter 11 case. The automatic stay shields a debtor from creditor harassment and from a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focused on their chapter 11 cases. *See*, e.g., *E. Refactories Co. v. Forty Eight Insulations*, 157 F.3d 169 (2d Cir. 1998). Were relief from the automatic stay to be granted, the resumed foreclosure action could very well make reorganization impossible given how such a proceeding would destroy the Debtor's entire Chapter 11 case, as described above.

35. Courts consistently have recognized that the considerable expense and distraction caused by litigation is a significant prejudice to the bankruptcy estate. *See*, e.g., *Borman v.*

11

*Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991); *Shugrue v. Air Lines Pilots Assn. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990); *Bally*, 402 B.R. at 623; *In re Lyondell Chem. Co.*, 402 B.R. 596, 610 (Bankr. S.D.N.Y. 2009) (finding the balance of the harms to be "the most important" factor when the debtor "has many matters on its plate in connection with its reorganization" and "[has] to move on very quickly" to achieve the reorganization's goals); *In re Northwest Airlines Corp.*, 2006 WL 694727, *2 (Bankr. S.D.N.Y. 2006) (denying motion for relief from stay and holding that the burden to the estate greatly outweighs that of the creditor where the debtors were at a critical stage of the reorganization and the trial would take management's attention away from the reorganization). The balance of harm is even more substantial in the instant case where lifting the stay could make resolution of disputes and confirmation of the plan impossible.

36. In comparison, the claims between the Debtor and the Movant can be resolved in the near future before this Court with much less time and expense than resuming foreclosure. Any plan will require the Movant be paid its allowed claim, and the Debtor's contemplated plan will provide for this. Therefore, the balance of hardships therefore clearly favors the Debtor and thus, the twelfth *Sonnax* Factor weighs in favor of denying relief from the automatic stay.

**C. Movant's Interests in the Property are Protected by a Significant Equity Cushion**

37. Moreover, Courts may find that there is adequate protection for a secured creditor where there is equity in the property, but the equity cushion must be significant. *See In re Rorie*, 98 B.R. 215, 221 (Bankr. E.D. Pa. 1989) (stating that in determining whether the equity cushion provides adequate protection, the court considers factors such as "the size of the cushion; the rate at which the cushion will be eroded; and whether periodic payments are to be made to prevent or mitigate the erosion of the cushion" and holding that an equity cushion valued at 42% of the claim is sufficient to provide adequate protection); *In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill.

1987) (explaining that "an equity cushion of 20% or more constitutes adequate protection," while "an equity cushion under 11% is insufficient to provide adequate protection"); *In re James River Assoc.*, 148 B.R. 790, 796 (E.D. Va. 1992) (holding that a 2% equity cushion is insufficient to provide adequate protection because of the deterioration of the equity cushion from accumulating interest).

38.     There is substantial equity in the Property.  The Debtor has already received several offers to purchase the Property, which will be further explained below.

39.     To succeed on a section 362(d)(2) motion, a secured creditor must establish that the debtor has no equity in the property and that the property is not necessary for an effective reorganization. *See Elmira Litho*, 174 B.R. at 900 (collecting cases).  Courts use simple arithmetic to calculate the equity in a property, subtracting the total claims from the value of the property.  If the value of claims against a property exceeds the value of the property, the debtor has no equity in the property. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.07[4][a].  If the movant shows that the debtor lacks equity in the property, the debtor must then show "that there [is] a reasonable possibility of a successful reorganization within a reasonable time" and that the property is "essential" to such a reorganization. *In re Timbers of Inwood Forest*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

40.     Here, the Movant currently enjoys a significant equity cushion in the Property, as the Debtor believes that based on recent offers to purchase the Property, the fair market value of the Property is estimated at no less than $16,500,000.00 and per the Motion, the Movant states its claim in this Chapter 11 case is an estimated $13,985,963.85.  To further evidence the Debtor's estimate of the fair market value of the Property, the Debtor has received at least four offers to purchase the Property for: i) $16,350,000.00, ii) $16,100,00.00, iii) $15,525,000.00, and iv)

$15,100,000.00[1]. Annexed hereto as **Exhibit "D"** are excerpts of each of these offers to purchase the Property.[2] These offers were procured before any meaningful marketing process began, which process will now fully be implemented in the Chapter 11 case.

41. Based on these preliminary offers, the Debtor believes an approximate valuation of the Property at $17,500,000.00 is a fair estimate and that the Movant is clearly adequately protected by virtue of this significant equity cushion. Additionally, from these preliminary offers, the Debtor further believes this value can even be increased through a competetive market and sale process of the Property.

**D) The Debtor Recommends Alternate Dispute Resolution with the Movant**

42. Based on the above, the Debtor requests that this Court send the parties to either mediation or back to Beth Din for arbitration, which the Movant had already agreed to do and is now ignoring.

43. The Debtor is hopeful that with proper alternative dispute resolution in place it can resolve its claims against the Movant and proceed with its contemplated market and sale process of the Property for a return to all creditors. The Motion is premature in light of, *inter alia*, the parties not yet having had a chance to mediate or arbitrate during this Chapter 11 case.

---

[1] The offers described in (iii) and (iv) were in contract, but the respective buyers pulled out due to Movant's tortious interference with the respective purchasers.

[2] In light of the Debtor's discovery that Movant may have tortiously interfered with prospective purchasers for the Property, the Debtor has redacted the identification of these potential purchasers from this exhibit. The Debtor will provide the unredacted version of this exhibit upon request by the Court.

**WHEREFORE**, the Debtor respectfully requests the Court deny Movant's Motion, and for such other, further, and different relief as this Court deems just and proper.

Dated: July 19, 2024
      White Plains, New York

Respectfully submitted,

DAVIDOFF HUTCHER & CITRON LLP
*Proposed Attorneys for the Debtor*
120 Bloomingdale Road, Suite 100
White Plains New York 10605
(914) 381-7400


By: */s/ Jonathan S. Pasternak*
      Jonathan S. Pasternak