

July 1, 2024

To: 125 Broad Partners LLC

Re: 125 – 133 Broad St Elizbeth NJ (Hersch Tower)

------------------------------------------------------------

Dear 125 Broad Partners LLC

The purpose of this Letter of Intent is to set forth the general terms and conditions under which ▇▇▇▇▇▇▇ is interested in buying the above referenced property. This is a non-binding letter of intent. The Buyer and Seller agree that the terms set forth below are not all of the material terms that need to be agreed to by them. There are additional material terms that the parties will negotiate as they complete the Purchase Agreement and Escrow Instructions. If the terms below stated are acceptable, it is our intention to negotiate the remaining material terms and complete a Purchase and Sale Agreement and Escrow instructions a.s.a.p.

| | |
|---|---|
| Sales Price: | **$16,350,000.00** |
| Due Diligence: | **30 Days** |
| Close: | **120 Days TOE** |
| Deposit: | $1,600,000.00 refundable deposit to be placed into escrow within same day of contract execution, completion of due diligence. Deposit will be non-refundable upon expiration of due diligence. |
| Buyer: | ▇▇▇▇▇▇▇ |
| **Contingency:** | **Clear Title** |
| Attorney: | |



We look forward to bringing this matter to a quick and mutually satisfactory conclusion.

Sincerely,

███████████

# Letter of Intent

July 08, 2024

**To owner of the property shown below**

This letter is to assure our interest and intention to purchase all the units of the said property including all commercial spaces under terms that will be agreed into a separate agreement.

| Property |
|---|
| 125 -133 Broad St Elizzabeth NJ |

| Buyer | |
|---|---|
| Name | |
| Address | |
| Contact | |
| Phone | |
| Fax | |
| e-mail | |

| Buyer's Attorney | |
|---|---|
| Name | |
| Phone | |
| E-fax | |
| E-Mail | |

| Terms | |
|---|---|
| Purchase Price | $16,100,000 |
| deposit | 5% |
| Terms | 30 days due diligence |
| Closing Time | 90 days TOE |

| Conditions |
|---|
| • Seller to deliver Clear title |

This offer supersedes and revokes any prior offer and or agreement verbal and or written. Respectfully,

EXECUTION VERSION

<u>**AGREEMENT OF PURCHASE AND SALE**</u>

**THIS AGREEMENT OF PURCHASE AND SALE** (this "Agreement") is made as of this 8th day of April, 2021 (the "Effective Date") between **125 BROAD PARTNERS LLC**, a New Jersey limited liability company, having an address at 543 Bedford Avenue #317 Brooklyn, New York 11211 ("Seller") and ███████████████████████████████████████████████████████████████████████████████████████████ ("Purchaser").

WITNESSETH:

WHEREAS, Seller is the owner of that certain parcel of land which is located in the City of Elizabeth, County of Union, State of New Jersey with an address of 125 Broad Street, Elizabeth, New Jersey 07201, presently known as Lot 83, Block 9 on the Elizabeth, New Jersey tax map and more particularly described on <u>Exhibit A</u> attached hereto and made a part hereof (the "<u>Land</u>");

WHEREAS, Purchaser is willing to purchase and acquire all of Seller's right, title and interest in and to the Land, together with all right, title and interest of Seller, if any, in and to the following (the "<u>Other Property</u>"): (a) all open or proposed highways, streets, roads, avenues, alleys, easements, strips, gores and rights of way in, on, across, in front of, contiguous to, abutting or adjoining the Land; (b) any and all buildings, structures, fixtures and other improvements now or hereafter erected on the Land (the "<u>Improvements</u>"); (c) all assignable permits, licenses, approvals, authorizations issued by any governmental authority in connection with the Land and the Improvements; and (d) any and all assignable guarantees, warranties, plans and specifications and other intangible property associated with the Land and the Improvements, and Seller is willing to sell, assign and convey to Purchaser its right, title and interest in and to the Land and the Other Property, each upon and subject to the terms and conditions specified herein.

NOW THEREFORE, in consideration of the foregoing premises, the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

**ARTICLE I**

**PURCHASE AND SALE**

**Section 1.1**  <u>Property</u>. Seller agrees to sell, assign and convey to Purchaser, and Purchaser agrees to purchase, assume and acquire from Seller, Seller's right, title and interest in and to the Land and the Other Property (collectively, the "<u>Property</u>"), upon and subject to the terms and conditions of this Agreement.

**Section 1.2**  <u>Purchase Price</u>. In consideration of the sale, assignment and conveyance by Seller to Purchaser of the Property pursuant to the terms of this Agreement, Purchaser agrees to pay Seller an amount equal to Fifteen Million Five Hundred Twenty Five Thousand and 00/100 Dollars ($15,525,000.00) (the "<u>Purchase Price</u>"), payable in cash at the Closing (as defined herein)

delivered to Seller by Purchaser, as increased or decreased by prorations, credits, and adjustments as herein provided.

**Section 1.3** _Payment of Purchase Price._ Subject to Section 3.4 below, the balance of the Purchase Price shall be paid by Purchaser to Seller at the Closing by wire transfer of immediately available federal funds to a bank account designated by Seller in writing.

**Section 1.4** _Earnest Money._

(a) On the Effective Date, Purchaser shall deposit with Riverside Abstract, having an address at 3839 Flatlands Avenue, Suite 208, Brooklyn, New York 11234 (the "Escrow Agent"), the sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00) by wire transfer of immediately available federal funds (which shall be nonrefundable except as expressly set forth herein) (the "Earnest Money"). Within three (3) business days of Purchaser's receipt of an Acceptable Loan Commitment (as hereinafter defined), Purchaser, Seller, and Escrow Agent shall enter into a commercially reasonable escrow agreement pursuant to which (i) Purchaser and Seller shall execute and record a memorandum of this Agreement (the "Memo"); (ii) Purchaser and Seller shall execute a release of the Memo (the "Release") to be held in escrow by Escrow Agent according to the terms of this paragraph; and (iii) Purchaser shall direct Escrow Agent to release Two Hundred Thousand and 00/100 Dollars ($200,000.00) of the Earnest Money to Seller (the "Pass Through Deposit") once the Memo has been recorded of record and Joel Friedman, principal of Seller, delivers a commercially reasonable guaranty and heter iska to Purchaser in connection with Seller's obligations to refund the Pass Through Deposit to the extent required pursuant to this Agreement. Upon any termination of this Agreement or upon consummation of the Closing, as applicable, the Pass Through Deposit shall either be retained by Seller or refunded to Purchaser pursuant to this Agreement, and the Escrow Agent shall record the Release; _provided however,_ that Escrow Agent is obligated to give five (5) days' written notice to Purchaser and Seller of its intention to record the Release prior to delivery thereof to the County Clerk and in the event Purchaser delivers notice to Escrow Agent instructing the Escrow Agent not to record the Release, Escrow Agent shall continue to hold the Release in escrow pending a final order from a court of competent jurisdiction or an agreement executed by both parties herein. At the Closing, the Earnest Money shall be applied as provided in Section 3.4 below. Failure of Purchaser to deposit the Earnest Money and/or direct the Escrow Agent to pay same to Seller as set forth above shall be a material breach of this Agreement by Purchaser, entitling Seller to its remedies under Article V notwithstanding any notice and cure periods otherwise afforded under Article V. In the event that a court of competent jurisdiction enters an unappealable judgment, or in the event that the parties mutually agree in writing, that Seller wrongfully retained the Pass Through Deposit when Seller should have refunded same to Purchaser pursuant to the terms of this Agreement, then Purchaser shall also be entitled to recover from Seller interest on the Pass Through Deposit accruing from the date the refund should have been paid to Purchaser at a rate of 9% per annum.

(b) The Escrow Agent shall hold the Earnest Money and the Bulk Sales Escrow (as defined in Section 2.3) in a non-interest bearing, federally insured escrow account in accordance with the terms and conditions of this Agreement to be disbursed as provided in this Agreement.

# AGREEMENT OF PURCHASE AND SALE

**THIS AGREEMENT OF PURCHASE AND SALE** (this "Agreement") is made as of this 25th day of May, 2023 (the "Effective Date") between **125 BROAD PARTNERS LLC**, a New Jersey limited liability company, having an address at 543 Bedford Avenue #317 Brooklyn, New York 11211 ("Seller") and                                                                                                  .").

## WITNESSETH:

WHEREAS, Seller is the owner of that certain parcel of land which is located in the City of Elizabeth, County of Union, State of New Jersey with an address of 125 Broad Street, Elizabeth, New Jersey 07201, presently known as Tax Block: 9, Tax Lot: 83 and Lot 83 Qual: T01 and T02 on the Elizabeth City, New Jersey tax map and more particularly described on Exhibit A attached hereto and made a part hereof (the "Land");

WHEREAS, Purchaser is willing to purchase and acquire all of Seller's right, title and interest in and to the Land, together with all right, title and interest of Seller, if any, in and to the following (the "Other Property"): (a) all open or proposed highways, streets, roads, avenues, alleys, easements, strips, gores and rights of way in, on, across, in front of, contiguous to, abutting or adjoining the Land and any and all air and development rights, and all personal used exclusively with the Land or Improvements; (b) any and all buildings, structures, fixtures and other improvements now or hereafter erected on the Land (the "Improvements"); (c) Seller's right, title and interest in and to the Lease (hereinafter defined), guaranties of the Lease and rents in connection with the Lease in effect as of Closing, if any, and all amendments thereto, and all unapplied security or other deposits paid under the Lease; (d) all assignable permits, licenses, approvals, authorizations issued by any governmental authority in connection with the Land and the Improvements; and (e) any and all assignable guarantees, warranties, plans and specifications and other intangible property associated with the Land and the Improvements, and Seller is willing to sell, assign and convey to Purchaser its right, title and interest in and to the Land and the Other Property, each upon and subject to the terms and conditions specified herein.

NOW THEREFORE, in consideration of the foregoing premises, the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

## ARTICLE I

## PURCHASE AND SALE

**Section 1.1** Property. Seller agrees to sell, assign and convey to Purchaser, and Purchaser agrees to purchase, assume and acquire from Seller, Seller's right, title and interest in and to the Land and the Other Property (collectively, the "Property"), upon and subject to the terms and conditions of this Agreement.

**Section 1.2** Purchase Price. In consideration of the sale, assignment and conveyance by Seller to Purchaser of the Property pursuant to the terms of this Agreement, Purchaser agrees to pay Seller an amount equal to Fifteen Million One Hundred Thousand and 00/100 Dollars ($15,100,000.00) (the "Purchase Price"), payable in cash at the Closing (as defined herein)

delivered to Seller by Purchaser, as increased or decreased by prorations, credits, and adjustments as herein provided.

**Section 1.3** Payment of Purchase Price. Subject to Section 3.4 below, the balance of the Purchase Price shall be paid by Purchaser to Seller at the Closing by wire transfer of immediately available federal funds to a bank account designated by Seller in writing.

**Section 1.4** Earnest Money.

(a) On the Effective Date, Purchaser shall deposit  ct

 (the "Escrow Agent"), the sum of Seven Hundred and Fifty Thousand and 00/100 Dollars ($750,000.00) by wire transfer of immediately available federal funds (which shall be nonrefundable except as expressly set forth herein) (the "Earnest Money"). Upon the expiration of the Due Diligence Period (as hereinafter defined), and upon confirmation from the Title Company that a memorandum of this Agreement has been recorded in the relevant county registrar's office, , provided that Seller shall not then be in default hereunder, the Escrow Agent shall release, upon Seller's written request and subject to Purchaser's reasonable written approval, and upon written confirmation from the Title Company that a memorandum of this agreement has been recorded pursuant to Section 8.18 hereunder, up to Two Hundred and Fifty Thousand and 00/100 Dollars ($250,000.00) of the Earnest Money to be used exclusively for paying for any Property-related relevant Seller expenses and obligations, or liens on the Property. Seller. At the Closing, the entire Earnest Money shall be applied as provided in Section 3.4 below. Failure of Purchaser to deposit the Earnest Money and/or direct the Escrow Agent to pay same to Seller as set forth above shall entitle Seller to cancel this Agreement.

The Escrow Agent shall hold the Earnest Money and the Bulk Sales Escrow (as defined in Section 2.3) in a non-interest bearing, federally insured escrow account in accordance with the terms and conditions of this Agreement to be disbursed as provided in this Agreement.

**Section 1.5** The Escrow Agent.

(a) If Seller or Purchaser claims that it is entitled to receive all or any portion of the Earnest Money or the Bulk Sale Escrow pursuant to the terms of this Agreement, that party shall notify the Escrow Agent in writing and shall simultaneously deliver written notice of its claim to the other party. Except as expressly set forth below, if the Escrow Agent does not receive a written objection from or on behalf of the other party within ten (10) days after receipt of the claiming party's notice, the Escrow Agent shall deliver to the claiming party all or that portion of the Earnest Money or the Bulk Sale Escrow claimed by the claiming party. If the Escrow Agent receives conflicting instructions or claims from Seller and Purchaser, the Escrow Agent shall continue to hold the Earnest Money or the Bulk Sale Escrow, as applicable, until jointly directed by Seller and Purchaser or until otherwise directed by a court of competent jurisdiction. Notwithstanding the foregoing, the Escrow Agent shall rely upon and follow the sole instruction of Seller in the event Seller requests the disbursement of the Bulk Sale Escrow pursuant to Section 2.3, provided Seller fully complies with all the provisions of Section 2.3, including, but not limited to sending a copy of the Tax Owing Letter. The Escrow Agent may at any time upon ten (10) days' notice to Seller and Purchaser discharge its duties hereunder by